## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

|  |  |
|---|---|
| IN RE: ) | |
| MARK ROBERT ADKINS ) | Case No. 12-31051 |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| IN RE: ) | |
| WILLIAM N. ADKINS ) | Case No. 12-31050 |
| ) | Chapter 7 |
| Debtor. ) | |

### MOTION TO APPROVE SALE OF INTEREST IN LIMITED LIABILITY CORPORATION

**COMES NOW** R. Keith Johnson, Trustee in each of the above-captioned pending Chapter 7 bankruptcy cases, and moves the Court for an order approving a sale of the interest of each estate in a certain Limited Liability Corporation known as Waterfront Group Stellar View, LLC (hereinafter "WGSV"). In support of this motion, the Trustee would show the Court the following:

1. On 4 May 2012 Mark Robert Adkins filed a voluntary Chapter 7 bankruptcy case in this Court.

2. Also on 4 May 2012 William N. Adkins filed a voluntary Chapter 7 bankruptcy case in this Court.

3. R. Keith Johnson is the duly appointed and acting Trustee in each of the bankruptcy cases referenced above.

4. William N. Adkins and Mark Robert Adkins are brothers.

5. William N. Adkins and Mark Robert Adkins (hereinafter sometimes referred to as "Adkins Brothers") jointly owned numerous LLC's, all of which were related to or involved in real estate development.

6. Each of the Adkins Brothers, at the time of the filing of the bankruptcy case, was a fifty percent (50%) equity owner of WGSV.

7. WGSV is currently the owner of certain lots that can be developed into building lots.

8. Upon information and belief, WGSV has few, if any, assets other than the building lots.

9. The building lots owned by WGSV are subject to certain property taxes that have been unpaid.

10. An entity known as Waterfront Group Funds, LLC, a post-petition entity formed by the Adkins Brothers on 13 February 2013, and currently owned by them, has offered to purchase all interests of both bankruptcy estates in WGSV for a purchase price of $35,000.00, "as is, where is."

11. The purpose of purchasing the interest in WGSV is to continue with the development of the building lots in an effort to complete the development and to sell those lots.

12. The closing will occur upon entry of an order approving sale, and there are no financing contingencies.

13. Attached hereto and incorporated by reference is a Purchase and Sale Agreement relating to the transaction, subject to Court approval.

14. The Trustee has examined certain information relating to WGSV, its tax returns, and other documents, and believes that the price offered is reasonable under all circumstances, and is in the best interest of the bankruptcy estates and their creditors.

**WHEREFORE,** the Trustee in each bankruptcy estate captioned above prays that the Court enter its order approving the sale of the interest of each bankruptcy estate in that certain Limited Liability Corporation known as Waterfront Group Stellar View, LLC to Waterfront Group Funds, LLC, for a purchase price of $35,000.00, said sale to be pursuant to the Purchase and Sale Agreement attached hereto, with said proceeds to be divided equally between the two (2) bankruptcy estates.

**FURTHER,** the Trustee prays that the Court authorize him to execute any and all documents necessary to complete the transaction contemplated by the Purchase and Sale Agreement.

This the 4th day of March, 2015.

/s/ R. Keith Johnson
R. Keith Johnson, Trustee
and Attorney for Trustee
NC State Bar No. 8840
1275 Highway 16 South
Stanley, North Carolina 28164
(704) 827-4200

State of North Carolina
Mecklenburg County

# PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is made as of the 8th day of January 2015, by and between Waterfront Group Funds, LLC as buyer ( hereafter either "Buyer" or "Purchaser"), and Bankruptcy Estates of Mark R. Adkins (12-31051) and William N. Adkins (12-31050), acting through Keith Johnson, trustee for each estate ("Trustee") as seller ("Seller"). Upon execution hereof Buyer agrees to buy and Seller agrees to sell and convey to buyer, without recourse, all of the ownership interest in and to Waterfront Group Stellar View, LLC (the "Property"), under the terms and subject to the conditions hereto.

1. PURCHASE PRICE: The purchase price is Thirty Five Thousand ($ 35,000.00) Dollars and shall be paid in cash at closing.

2. CONDITIONS:
(a) The Property must be in substantially the same or better condition at Closing as on the date of this offer, reasonable wear and tear excepted.
(b) All, liens, orders and other charges against the Property, not assumed by Buyer, must be paid and satisfied by Seller prior to or at Closing such that cancellation may be promptly obtained following Closing. Seller shall remain obligated to obtain any such cancellations following Closing. It is understood and agreed that the sale will be subject to any and all existing liens on any property owned by Waterfront Group Stellar View, LLC
(c) Title will be delivered at Closing by the undersigned under authority given and existing through the jurisdiction of the United States Bankruptcy Court, for the Western District of North Carolina on behalf of Trustee. Seller shall obtain the approval of Court as necessary. Proceeds of the sale shall be paid at closing in such manner as the Court may direct.

3. PRORATIONS AND ADJUSTMENTS: The Property shall be subject to all and every assessment for taxes, property owners dues, or any other lien or charge which constitutes a lien at the time of sale on any property of the Company.

4. EXPENSES: Buyer shall be responsible for all costs with respect to the transaction including but not limited to title search, title insurance and for preparation and recording of all instruments required to secure the conveyance and all other documents necessary to perform Seller's obligations under this agreement. The net amount paid to seller at closing shall be the full purchase price set out above.

5. AS IS: Seller makes no representation whatsoever to Buyer about the condition of the Property, the status of title, the characteristics of the Property or its fitness for any purpose. Seller has no knowledge of and makes no representation about the value or marketability of the Property, and Buyer accept the Property AS IS.

6. CLOSING DOCUMENTS: Seller shall furnish at Closing such authorizations as are satisfactory to Buyer that Seller is authorized to convey the property to Buyer and that there are no unfiled claims of lien. This contract is contingent upon any and all authorizations that are necessary and appropriate, whether by Bankruptcy Court order, affidavit, or otherwise.

7. CLOSING: All parties agree to execute any and all documents and papers necessary in connection with Closing and transfer of title on or about February 1, 2015.

8. POSSESSION: Unless otherwise provided herein, possession shall be delivered at Closing. No alterations, excavations, tree removal or other such activities may be done before possession is delivered.

9. Possession: Examination of the Property.   Buyer shall have a period ("Due Diligence Period") beginning on the Effective Date of this Agreement and continuing until January 15, 2015 during which to examine the property, perform such tests and evaluations as Buyer deems fit and to cancel this agreement in Buyer's sole discretion. It is understood and agreed that Buyer has no right of possession, occupancy or use of the Property until the closing of the sale of the Property and the actual conveyance thereof by Buyer to Purchaser. From and after the Date of Execution of this Agreement until the earlier of such time as the closing occurs or this Agreement is terminated, Buyer (at Buyer's own risk) and Buyer's authorized agents (at their own risk) may have access to the

Buyer Initials: WNA       Seller Initials: RJ

Page 1

Property at reasonable times for the purpose of inspecting, examining, and testing same. Buyer shall indemnify and hold harmless Seller, and Seller's shareholders, officers, directors, members, managers, partners, employees, contractors (the term "contractor" as used in this Agreement also includes all subcontractors), agents, successors and assigns, from and against any and all causes of actions, claims, costs, judgments, liens, damages, expenses and liabilities, including reasonable attorney fees, arising out of or resulting from the activities of Buyer or Buyer's authorized agents in inspecting, examining, and testing the Property. In conducting such inspections, examinations, and tests, Buyer shall not cut or remove, or allow the cutting or removal of, any trees or other vegetation from the Property without the prior written consent of Seller. Notwithstanding anything to the contrary that may appear herein, the foregoing indemnities and liabilities shall survive the closing and shall survive any termination or default of this Agreement.

10. **RISK OF LOSS:** The risk of loss or damage by fire or other casualty prior to Closing shall be upon Seller.

11. **ASSIGNMENTS:** This contract may not be assigned without the written consent of all parties not to be unreasonably withheld, and if assigned by agreement, then this contract shall be binding on the assignee and his heirs and successors.

12. **PARTIES:** This contract shall be binding upon the parties, including their heirs, successors and assigns. As used herein, words in the singular include the plural and the masculine includes the feminine and neuter genders, as appropriate.

13. **SURVIVAL:** The terms of this contract shall be performed before and at closing, and if closing occurs and title is passed, then this contract shall be considered fully executed, and neither party shall have any additional or further claims hereunder.

14. **ENTIRE AGREEMENT:** This contract contains the entire agreement of the parties and there are no representations, inducements or other provisions other than those expressed herein. All changes, additions or deletions hereto must be in writing and signed by all parties.

15. **EFFECTIVE DATE:** This offer shall become a binding contract (the "Effective Date") when signed by both Buyer and Seller and such signing is communicated to the offering party. This contract is executed under seal in signed multiple originals, all of which together constitute one and the same instrument and the parties adopt the word "SEAL" beside their signatures below.

16. **BROKERS.** Seller and Buyer acknowledge that there are no Broker's fees attributable to this transaction.

17. **FURTHER ASSURANCES.** Each of the parties hereto agree to execute and deliver any and all documents and to take any reasonable further actions either before or after the execution of this Agreement as may be reasonable and appropriate in order to carry out the purposes and intents of this Agreement.

Waterfront Group Funds, LLC, Purchaser

By: _____
William N. Adkins, Manager

Bankruptcy Estate of Mark R. Adkins

By: _____ (seal)
Keith Johnson, Trustee

Bankruptcy Estate of William N. Adkins

By: _____ (seal)
Keith Johnson, Trustee

Buyer Initials: WNA     Seller Initials: RKJ

Page 2

NPGB03:1103225